COLLEEN J. MILES                              :          IN THE
43 Eagle Trail
Fairfield, Pennsylvania 17320                 :          UNITED STATES DISTRICT COURT

    and                   :          FOR THE

KEVIN MILES                                   :          DISTRICT OF MARYLAND
43 Eagle Trail
Fairfield, Pennsylvania 17320                 :          Case No.:

       Plaintiffs          :

    v.                    :

STEPHAN U. HOCHULI, M.D.                       :
1380 Progress Way, Suite 109
Eldersburg, Maryland 21784                     :

    and                   :

CARROLL HOSPITAL CENTER, INC.                  :
200 Memorial Avenue
Westminster, Maryland 21157                    :
    Serve on Resident Agent:
    Charles O. Fisher     :
    179 East Main Street
    Westminster, Maryland 21157   :

       Defendants          :

:     :     :     :     :     :     :     :     :     :     :     :

## COMPLAINT

COMES NOW the Plaintiff, Colleen J. Miles, by her attorneys, Jonathan Schochor, Jonathan E. Goldberg, and Schochor, Federico and Staton, P.A. and sues, Stephan U. Hochuli, M.D., and Carroll Hospital Center, Inc., Defendants:

1.      The Plaintiffs, Colleen J. Miles and Kevin Miles, are citizens of the United States of America and citizens and domiciliaries of the State of Pennsylvania. The Plaintiffs, Colleen J. Miles and Kevin Miles, are over twenty-one (21) years of age.

1

2.     The Defendant Stephan U. Hochuli, M.D., is a citizen of the United States of America and a citizen and a domiciliary of the State of Maryland, and is over twenty one (21) years of age.

3     The amount of controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4.     Jurisdiction is conferred upon this Honorable Court based upon diversity of a citizenship pursuant to 28 U.S.C., Section 1332, and venue is conferred by virtue of 28 U.S.C., Section 1391.

### COUNT I

5.     At all times of which the Plaintiff complains, the Defendant Stephan U. Hochuli, M.D. (hereinafter referred to as "Hochuli") represented to the Plaintiff and the public that he possessed the degree of skill, knowledge and ability possessed by reasonably competent medical practitioners, practicing under the same or similar circumstances as those involving the Plaintiff.

6.     The Plaintiff alleges that the Defendant Hochuli herein, including duly authorized agents and/or employees of the Defendant Hospital, owed to the Plaintiff the duty to exercise the degree of care, skill and judgment expected of a competent medical practitioner acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, surgery and/or treatment to correct such conditions without injury upon the Plaintiff, continuous evaluation of the Plaintiff's condition and the effects of such treatment, and adjustment of the course of treatment in response to such ongoing surveillance and evaluation -- all of which the Defendant failed to do.

2

7.     The Defendant Hochuli was negligent in that he failed to employ appropriate treatment, surgery, tests and/or procedures, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to properly and appropriately diagnose the Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests and/or procedures performed, failed to properly evaluate the effects of chosen treatment, failed to adjust the Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition, and was otherwise negligent.

8.     The Plaintiff alleges that the Defendant Carroll Hospital Center, Inc. (hereinafter referred to as "Hospital"), through its agents, servants and employees, owed to the Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury upon the Plaintiff, continuous evaluation of the Plaintiff's condition and effects of such treatment, and the adjustment of the course of treatment in response to ongoing surveillance and evaluation -- all of which the Defendant failed to do.

9.     The Defendant Hospital, through its agents, servants and/or employees, was negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to carefully and thoroughly evaluate the Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests, treatment and/or procedures performed, failed to adjust the

3

Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Plaintiff's condition, failed to diagnose the Plaintiff's condition and was otherwise negligent.

10.     At all times referred to herein, the Defendant Hochuli acted for himself and as a duly authorized agent and/or employee of the Defendant Hospital, acting within the scope of his authority.

11.     As the direct and proximate result of the ongoing negligence of these Defendants and each of them, including the Defendant Hospital's personnel, the Plaintiff suffered unending physical pain, emotional anguish as well as permanent disability as is more fully described, hereinbelow.

12.     It is alleged that on April 1, 2014, the Plaintiff, Colleen J. Miles, was a 48-year-old female with a history of having undergone gastric bypass surgery previously.  She presented to the Defendant Hospital with complaints of vomiting and was diagnosed with an obstruction due to a stricture as the gastrojejunostomy site.   Accordingly, the Defendant Hospital's personnel recommended that the Plaintiff undergo surgical repair.

13.     It is alleged that the Plaintiff was seen by the Defendant Hochuli, who at all times referred to herein acted as an expert in general surgery.  On April 2, 2014, the Plaintiff underwent lysis of adhesions and the revision of the gastrojejunostomy performed by the Defendant Hochuli.   For several days postoperatively, the Plaintiff exhibited markedly diminished bowel sounds and had not passed flatus.

14.     Accordingly, on April 5, 2014, the Plaintiff underwent an upper gastrointestinal study which revealed that the contrast material (Gastrografin) did not exit the stomach as

expected indicating that a blockage remained.   Further, there was no evidence of any extravasation (leak) of the contrast.  A follow-up abdominal film also failed to confirm that the gastric outlet was open as expected and required.

15.   On April 7, 2014, the Plaintiff was noted to be suffering abdominal distension and upper abdominal pain.  She was also suffering with tachycardia such that a critical care team was called.  A repeat upper gastrointestinal study was performed which noted the presence of contrast in the left paracolic gutter, which is evidence of a leak within the gastrointestinal tract.  Again, there was no patent exit to the stomach demonstrated.  Accordingly, the Plaintiff was transferred to Intermediate Medical Care (IMC) and started on Total Parenteral Nutrition (TPN) (nutrition through an intravenous line, and not by mouth).   These Defendants began "conservative treatment" with nasal gastric decompression hoping that the anastomotic leak, proven through evidence of contrast in the gutter, would seal without surgical intervention.

16.   On April 10, 2014, the Plaintiff's abdomen was noted to be even further distended with complaints of shortness of breath.  She additionally suffered with decreased breath sounds at both lung bases.

17.   On April 12, 2014, the Plaintiff underwent an additional upper gastrointestinal study which was similar to the prior examination.  A computed tomography (CT) scan of the abdomen and pelvis with oral contrast showed a large intraabdominal fluid collection and externalization of the oral contrast from the gastric pouch.   This confirmed continuing extravasation due to a leak at the anastomosis site.  Drains were placed in the left and right mid-abdominal areas.

5

18.     Finally, on April 13, 2014, it was decided that the Plaintiff was to be transferred to a tertiary care facility.  Accordingly, on April 14, 2014, the Plaintiff was transferred to a referral hospital where she was studied and treated conservatively initially.

19.     On April 22, 2014, an upper endoscopy was performed in an attempt to cannulate the gastrojejunostomy site.  That effort resulted in perforations as the site was tightly closed -- a totally unexpected surgical finding.

20.     The Plaintiff was taken to an operating room at which time the surgeon opened the area and was shocked to note that the gastrojejunostomy that was supposed to have been recreated at the Defendant Hospital had not been recreated.   In other words, the gastrojejunostomy was not connected to the gastric pouch, but was mistakenly connected to a remnant from prior surgery, which amazingly, left the Plaintiff in discontinuity.  Inexplicably, the Defendant Hochuli failed to connect the gastrojejunostomy site to the stomach so that nothing passing down the alimentary canal could pass through the site into the stomach.  It was surgically sealed through the negligence referred to herein.  Obviously, had the Defendant performed the surgery correctly, the gastrojejunostomy site would have been attached to the stomach and opened so that food and nutrition could pass through in normal fashion.  Due to the fact that the gastrojejunostomy site was mistakenly hooked up to a remnant, it served as a sutured "dead end."  Nothing could pass through the site due to the negligence referred to herein.

21.     Surgery at the referral hospital continued with the surgical team re-establishing a patent connection.  Non-viable tissue was excised, multiple Jackson-Pratt (JP) drains were placed, and the Plaintiff was transferred to the Surgical Intensive Care Unit (SICU) as the surgical wound was unable to be closed.  In essence, the Plaintiff left the operating room in a severely injured and debilitated condition due to the ongoing negligence as referred to herein.

22.     The Plaintiff remained confined at the tertiary hospital until May 15, 2014, at which time she was discharged for further care and recuperation.  At that time, she was still on TPN (nothing by mouth) with strict bowel rest.

23.     On June 6, 2014, she was permitted a soft diet.  However, today, the Plaintiff continues to suffer with chronic digestive dysfunction, including constipation, bloating and diarrhea.  She also suffers with significant fluctuations in weight due to her inability to take in nutrition and metabolize it appropriately.  Additionally, the Plaintiff is considered a "high-risk" for any additional surgery due to the negligence alleged herein.

24.     It is alleged that the Plaintiff has lost her former state of physical and emotional well-being, is unable to participate in activities she enjoyed previously.  Additionally, the Plaintiff is unable to hold gainful employment as she did previously.  In fact, she lost her position as an employee of the Defendant Hospital as a result of the negligence complained of, and has required the assistance of others during her daily activities.

25.     Had these Defendants and each of them acted in accordance with the standards of care, it is alleged that all of the injuries, damages as well as permanent disability would have been avoided -- with the Plaintiff returning to all of her normal activities with no deficits whatsoever.  However, as a direct and proximate result of the ongoing negligence of these Defendants and each of them, the Plaintiff has in the past, is presently, and will in the future continue to suffer unending physical pain, emotional anguish, as well as fear, anxiety, humiliation and embarrassment over her condition.  Additionally, it is alleged that the Plaintiff has in the past, is presently, and will in the future continue to incur hospital, surgical, physiotherapeutic, pharmacological, nursing, custodial and/or other losses and expenses for which claim is made.

26.     The Plaintiff refers to the negligence of these Defendants and each of them as the sole and proximate cause of all of the injuries, damages and permanent disability she has sustained -- with the Plaintiff being in no way contributorily negligent.

27.     The negligence complained of occurred in Carroll County.  Jurisdiction and venue is claimed in United States District Court for the District of Maryland.

WHEREFORE, the Plaintiffs claim damages in excess of $75,000.00, the minimum jurisdictional amount.

_____
Jonathan Schochor

_____
Jonathan E. Goldberg

_____
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland  21202
(410) 234-1000

Attorneys for the Plaintiffs

## COUNT II

COMES NOW the Plaintiff, Kevin Miles, by his attorneys, Jonathan Schochor, Jonathan E. Goldberg, and Schochor, Federico and Staton, P.A. and sues, Stephan U. Hochuli, M.D., and Carroll Hospital Center, Inc., Defendants:

8

29.     The Plaintiff incorporates in this Count those facts set forth in Count I hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

30.     The Plaintiffs allege they are husband and wife.  As the result of the negligence of these Defendants, the Plaintiffs assert that their marriage and marital relationship was interrupted and continues to be interrupted.

31.     The severe, unremitting pain from which the Plaintiff, Colleen J. Miles, suffers as well as the permanent disability sustained as a result of the negligence of these Defendants, has permanently interrupted and damaged the Plaintiffs' marriage and the Plaintiff, Colleen J. Miles' ability to function as a normal wife.

32.     The negligence complained of occurred in Carroll County.  Jurisdiction and venue is claimed in United States District Court for the District of Maryland.

WHEREFORE, the Plaintiffs claim damages in excess of $75,000.00, the minimum jurisdictional amount.


_____
Jonathan Schochor


_____
Jonathan E. Goldberg


_____
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland  21202
(410) 234-1000

Attorneys for the Plaintiffs

9